## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PATRICIA C. PATE,                              )
                                               )
          Plaintiff,                        )
                                               )
v.                                             )       No.  06-CV-415-SAJ
                                               )
MICHAEL J. ASTRUE,                             )
Commissioner of Social Security                )
Administration,[1/]                            )
                                               )
          Defendant.                        )

### OPINION AND ORDER[2/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.  Plaintiff asserts that the Administrative Law Judge ("ALJ") (1) erred in failing assess the severity of Plaintiff's mental impairments; (2) failed to properly weigh the treating psychiatrist's opinion; (3) failed to properly assess Plaintiff's residual functional capacity; (4) failed to properly assess Plaintiff's credibility; (5) erred in finding Plaintiff could perform other work.  For the reason discussed below, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Patricia C. Pate, was born September 1, 1957.  [*E.g.,* R. 57, 547].  She claims to be disabled due to problems with neck and back pain, her mental health, and her

---

[1/]   Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section  42 U.S.C. § 405(g) of the Social Security Act.

[2/]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

hands.  [R. 83].  She has relevant past work experience as a waitress and home health aide.  [R. 52-56, 97-105].  She has also been employed for short periods of time as a cashier, house cleaner, bartender, veterinarian helper, certified nurse assistant, kitchen worker, stock clerk and file clerk. [*See id.*]

Plaintiff filed for social security benefits and supplemental security income benefits on July 28, 2003 (protective filing date: July 14, 2003). [R. 51, 57-60, 547-50].  She alleged that she became disabled on January 1, 1993. [*Id.*] Plaintiff last met the insured status requirements for Title II benefits on September 30, 1996, and must be found disabled on or prior to that date to be eligible for Title II disability benefits.  Her applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ.  That request was granted, and a hearing was held on November 16, 2004. [R. 627-74].  ALJ Gene M. Kelly issued a decision denying benefits on April 26, 2005, concluding that Plaintiff was not disabled within the meaning of the Social Security Act. [R. 15-26].  Plaintiff filed a Request for Review of Hearing Decision, which the Appeals Court denied June 30, 2006. [R. 8-10].  Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

-- 2 --

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).   The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner."  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/]   Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).   The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

## 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had "severe" problems with her neck, back, depression, anxiety, bipolar disorder, personality, and shortness of breath, but that she did not have an impairment or combination of impairments listed in, or medically equal in severity to  one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  He also found claimant's testimony credible only to the extent consistent with a residual functional capacity ("RFC") for a wide range of sedentary work.  Specifically, he determined that Plaintiff could lift and carry 20 pounds; stand and/or walk 6 hours in an 8-hour workday at 30 minute intervals and sit 6 hours in

---

[4/]    Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

an 8-hour workday with no breaks.  He stated that Plaintiff could occasionally climb, push/pull, twist/nod head, and must avoid dust, fumes, and gases.

As to her mental RFC, the ALJ determined that Plaintiff required simple, repetitive, and routine work with limited contact with the public, coworkers and supervisors.  At step four of the sequential evaluation process, the ALJ found that Plaintiff is unable to perform her past relevant work, but that, given her RFC, there were jobs available in the regional and national economy that he claimant could perform.  Thus, he concluded that Plaintiff was not under a disability, as that term is defined in the Social Security Act, at any time through the date of his decision.

## 4.  REVIEW

### a.  Mental Impairment

Plaintiff's first argument is that the ALJ erred in failing to assess the severity of Plaintiff's mental impairments in accordance with the technique set forth in the applicable regulations.  The procedure or "technique" for evaluating a mental impairment is outlined at 20 C.F.R. §§ 404.1520a, 416.920a and the Listing of Impairments.  The procedure first requires the Commissioner to evaluate a claimant's "symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1); 416.920a(b)(1).  Listings generally include a set of medical findings referred to as "paragraph A criteria" or "Part A" criteria.  The Commissioner "must then rate the degree of functional limitation resulting from the impairment(s)," using what is generally referenced as the "paragraph B" or "Part B'" criteria of the Listings. *Id.* at §§  404.1520a(b)(2); 416.920a(b)(2).  Finally, the Commissioner must document application of the technique.  *Id.*  The following four functional areas are

considered under Part "B" of the Listing at 12.04: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* at 404.1520a(c)(3); 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). If the Commissioner rates the degree of a claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the Commissioner  generally concludes that the alleged impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1); 4164.920a(d)(1).

Contrary to Plaintiff's assertion, the ALJ did specify the symptoms, signs, and laboratory findings that substantiate the presence of mental impairments and document his findings in his decision.  Beginning on page three [R. 20] of his decision, he stated: The medical evidence reflects by history the claimant was diagnosed with depression in 1995." *Id.*  He discussed her history of alcohol abuse, her treatment at Laureate Psychiatric Clinic in 1996, her medications, and her treatment in 1997 by Parkside, Inc., for bipolar disorder and dependent traits. [R. 20-21].  He continued by describing Plaintiff's treatment by Vanessa L. Werlla, M.D., at Family & Children's Services in 2003 and 2004 and Dr. Werlla's assessment. [R. 21].  The ALJ also reported the findings of consultative  examiner Larry Vaught, Ph.D. in 2005, as well as claimant's testimony regarding her alleged mental impairment. [R. 21-22].

However, the ALJ failed to rate the degree of functional limitation resulting from Plaintiff's alleged mental impairment in the four broad functional areas, or to include a specific finding as to the degree of limitation in each of the functional areas.  *See* 404.1520a(c)(3); 416.920a(c)(3); 404.1520a(e)(2; 416.920a(e)(3).  He stated: "In the area

of daily living, the claimant appeared to be fairly independent. In the areas of sustained concentration/persistence, her short term and remote memory appeared fairly intact. Calculation, abstraction, and basic judgment appeared basically intact. "" [R. 23]  This statement speaks to two of the four areas.  The ALJ did not address her degree of functional limitation in social functioning[5] or her episodes of decompensation. These omissions lead the Court to conclude that the ALJ failed to properly evaluate Plaintiff's mental impairments.

### b.  Treating Psychiatrist's Opinion

The ALJ's failure to properly evaluate Plaintiff's mental impairments appears to have stemmed, in part, from his reliance on the opinion of the consultative examiner and his rejection of one of Plaintiff's treating psychiatrists.  The Commissioner is required to generally give more weight to medical opinions from a treating source than to that of a non-treating source.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see Langley*, 373 F.3d at 1118; *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004);  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

---

[5]    The ALJ did mention the consultative examiner's observations that (1) Plaintiff had been prescribed psychotropic medications; (2) she reported ongoing racing thoughts, self-deprecation, a sense of hopelessness, loss of initiative and interest, withdrawal and some anhedonia, and(3) her appetite was good although she had some fatigue and difficulty sleeping without medications. [R. 23].  The consultative examiner listed these observations in a paragraph that began: "In the area of social functioning, . . ." [R. 540], but the ALJ did not specify these observations as such, and neither the consultative examiner nor the ALJ specified whether Plaintiff had periods of decompensation, the fourth area of functioning designated in the Regulations.

If the ALJ concludes that the treating physician's opinion is not entitled to controlling weight, the inquiry does not end.  The ALJ must then evaluate whether the treating source medical opinions are entitled to deference and the ALJ must weigh the treating opinion using all of the factors provided in §§ 404.1527, 416.927.  *See Langley*, 373 F.3d at 1119; *Hamlin*, 365 F.3d at 1215 (ALJ must consider specific factors in determining what weight to give medical opinion).  The factors which the ALJ should evaluate include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*E.g. Watkins*, 350 F.3d at 1301 (quotation omitted); s*ee* 20 C.F.R. § 404.1527(d)(2)-(6).

Further, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300 (quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (quotations omitted).  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ in this case acknowledged that Plaintiff was treated by Vanessa L. Werlla, M.D., at Family & Children's Services from June 2003 through October 2004. [R. 21].  He

pointed to the progress notes from that period showing Plaintiff's alcoholism, treatment, and improvement, as well as Plaintiff's contention, early in her time at Family and Children's Services, that she was battling depression but was "better." [*Id.*]  The ALJ indicated that Dr. Werlla assessed Plaintiff's ability to do work-related activities in May 2004, finding that Plaintiff had eleven "moderate" limitations and four "marked" limitations. [*Id.; see* R. 407-07].  The ALJ contrasted that assessment with an assessment by the consultative examiner, Larry Vaught, Ph.D., who found in January, 2005, that plaintiff had eight "moderate" limitations and no "marked" limitations. [R. 542-44.]

The ALJ explained later in his decision that he did not give Dr. Werlla's opinion or report great weight because he deemed it "entirely inconsistent with the evidence of record including her own records and [ ] not consistent with the psychological testing set out by the consultative physician in January 2005."  As Plaintiff points out, the ALJ did not identify the specific inconsistencies he found with Dr. Werlla's opinion and failed to explain what evidence he considered in finding her opinion "inconsistent."  In response to Plaintiff's arguments in this regard, the Commissioner purports to identify three inconsistencies. [Resp. Br. Dkt. # 19, at 5], but such identification amounts to a "post-hoc" justification that the Tenth Circuit has condemned repeatedly.  *See, e.g., Robinson v. Barnhart*, 366 F.3d 1078,k 1084 (10th Cir. 2004).  The Court finds that the ALJ failed to give a specific, legitimate reason for not affording great weight to Dr. Werlla's opinion and report.

### c.  Residual Functional Capacity

The ALJ's errors with regard to his assessment of Plaintiff's mental impairment carried over in his RFC finding.  His RFC evaluation limits Plaintiff to "simple, routine and

repetitive work with limited contact with public coworkers and supervisors" [R. 23, 25] and does not include Dr. Werlla's assessment that Plaintiff had "marked" limitations in dealing with the public, dealing with work stresses, maintaining attention and concentration. [R. 407].  When the ALJ included those limitations in his fourth hypothetical to the vocational expert, the vocational expert opined that Plaintiff could not perform the unskilled jobs that the ALJ ultimately found Plaintiff could perform. [R. 667-68].  Although it was not error per se for the ALJ to exclude those limitations in his RFC, his failure to properly evaluate her mental impairment at Step Three of the sequential evaluation process and to adequately explain why he failed to give Dr. Werlla's great weight undermine his evaluation of Plaintiff's mental RFC and his assessment of the work activity she could perform at Step Five.

Plaintiff faults the ALJ's assessment of her physical RFC as well, but the Court declines to address that issue other than to note the possibility that the ALJ may have erred with regard to his assessment of Plaintiff's alleged hand problems.  Plaintiff argues that she lacks the ability to handle or grasp objects on a sustained basis and thus, that she would be unable to perform the two jobs identified by the vocational expert as jobs she could perform with the RFC assigned to her by the ALJ.  The Commissioner's response to this argument is notably absent in his response brief.  *See* Resp.Br., Dkt. # 19.

The Court also declines to address Plaintiff's remaining arguments as to the ALJ's credibility evaluation and his Step Five assessment of other jobs she could perform, as her arguments regarding her mental impairment and her hand/wrist problems permeate these issues as well.   The Court notes, however, that there may be some discrepency between the skill and exertional levels required for the "sorter" job identified by the vocational expert and the RFC assessed for Plaintiff by the ALJ.  On remand, the ALJ may wish to address

this issue as well.  The Commissioner's decision is hereby **reversed and remanded** for further proceedings consistent with this opinion.

It is so ordered this 28th day of September, 2007.

Sam A. Joyner
United States Magistrate Judge